IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION JUL 19 ₱ 2: 28

TELMA O. HALL,                    )        DEBRA P. HACKETT, CLK
                                  )          U.S. DISTRICT COURT
        Plaintiff,                )          MIDDLE DISTRICT ALA.
                                  )
v.                                ) CASE NO.: 2:16-CV-593
                                  )
ALABAMA STATE                     ) DEMAND FOR JURY TRIAL
UNIVERSITY                        )
                                  )
        Defendant.                )

## COMPLAINT

### PRELIMINARY STATEMENT

1.     Plaintiff, a former employee of Alabama State University, seeks declaratory and injunctive relief, compensatory damages, backpay, and frontpay from Defendant arising from Defendant's violation of her rights guaranteed to plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq, amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, 42 U.S.C. §§ 1981 and 1983, and the Lilly Ledbetter Fair Pay Act of 2009 (hereinafter "Title VII"). Specifically, Plaintiff alleges that the Defendant discriminated against her based upon gender, and retaliated against her for protesting gender discrimination in the terms and conditions of her employment in violation of Title VII. The Plaintiff seeks compensatory damages and requests a jury trial pursuant to 42 U.S.C. § 1981a.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq, as amended by the Civil Rights Act of 1991.

·3.     Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e, et. seq.

4.     This action is brought within the State where the unlawful employment practices were committed, making venue proper under 42 U.S.C. § 2000e-5(f)(3).

5.     Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202 (declaratory judgments), and Fed. R. Civ. P. Rule 57.

6.     Plaintiff has fulfilled all conditions precedent to the institution of this action under 28 U.S.C. § §1331 and 1343(4), and the Act of Congress known as Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff timely filed her charges of sex discrimination and retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 180 days of occurrence of the last discriminatory act, and she also alleged continuing violations. Plaintiff timely filed her claim of sex discrimination and retaliation within 90 days of the receipt of her right-to-sue letters from the Department of Justice, Civil Rights Division.

2

## PARTIES

7.    Plaintiff, Telma O. Hall, is an African-American, female citizen of the United States and of the State of Alabama.  She is a resident of this Judicial District and Division.  At all times relevant to this action, Plaintiff was employed by the Defendant in its Montgomery, Alabama location.

8.    Defendant Alabama State University ("ASU") is an employer within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto. At all times relevant to this action, Defendant ASU has employed at least fifteen (15) or more employees.

9.    Defendant ASU is doing business within this District and Division.

10.    Plaintiff was an employee of Defendant ASU within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

## FACTS

11.    Plaintiff Telma O. Hall (hereinafter "Plaintiff" or "Coach Hall") was employed by Defendant ASU on or about October 17, 2005, as the Head Coach of the Women's Softball Team at a yearly salary of $34,000.00, but Plaintiff was given a prorated written contract in the amount of $32,605.12.

12.    Plaintiff was employed by ASU as the Head Coach of the Women's Softball Team from October 2005 until she was terminated due to her gender and in

3

retaliation for protesting discrimination on or about May 2, 2014. Plaintiff was also employed by ASU as an Instructor to teach classes in 2013 and 2014.

13.    Plaintiff attended ASU as a student athlete on the softball team and she graduated from ASU in May 2003 with a B.S. in Physical Education. Plaintiff received her M.Ed., in Physical Education from ASU in August of 2013. Plaintiff was attending classes and working on her Health Information Management degree from ASU at the time of her discriminatory termination in May of 2014.

14.    Plaintiff was given a one page, written employment contract as Head Coach of the Women's Softball Team by Defendant ASU for each fiscal year in 2005, 2006, and 2007.

15.    In fiscal year 2005, Defendant ASU gave Coach Hall a one page, written prorated contract in the amount of $32,605.12 for the period of October 17, 2005, to September 30, 2006.

16.    In fiscal year 2006, Defendant ASU gave Coach Hall a one page, written employment notice as Head Coach of the Women's Softball Team for an annual salary of $36,614.00 for the period of October 1, 2006, to September 30, 2007.

17.    In fiscal year 2007, Defendant ASU gave Coach Hall a one page, written employment notice as Head Coach of the Women's Softball Team for an annual salary of $38,079.00 for the period of October 1, 2007, to September 30, 2008.

4

18.     From 2008 until February 2013, Coach Hall requested that Defendant ASU provide her with a new written contract and an increase in salary, but she did not receive the same.

19.     Until she filed her original EEOC Charge on or about February 25, 2013, Coach Hall had never received a negative employment evaluation by Defendant ASU.

20.     In or about June or July of 2011, Defendant ASU hired a new baseball staff, including Head Coach Mervyl S. Melendez, a male. Defendant ASU gave Coach Melendez a multi-year, twelve page, written employment contract as Head Coach of the male Baseball team, which contained provisions for an annual salary of $125,000.00, a car allowance of $600.00 per month, a one time signing bonus of $15,000.00 to be paid within 60 days of execution of the contract, longevity bonuses of $10,000.00 and $25,000.00, moving expenses, and a section with elaborate performance bonus provisions, including, but not limited to, $20,000.00 for just advancing to the College World Series, $2,500.00 for beating a top 25 ranked team, $5,000.00 for becoming the Eastern SWAC regular season top seed, $5,000.00 for winning the SWAC Championship Tournament, $5,000.00 for exceeding team Academic Progress Rate (APR) of 950 for the three (3) most recent academic quarters, and $7,500.00 for obtaining a team GPA of 3.25 based upon the two (2) most recent academic semester (not counting summer semester). The contract also

5

contained provisions setting out a process for termination either for cause or not for cause. The period of the contract was from June 24, 2011, until September 30, 2016.

21.     As Head Coach of the Women's Softball Team, Coach Hall had substantially the same or similar job duties and responsibilities as Coach Melendez had as Head Coach of the Men's Baseball Team. The sport is played with the same number of players, on a similar field with just minor differences in the dimensions of the field, and with a different pitching style used by the pitchers.

22.     Defendant ASU did not provide equal facilities for the women's softball team that it provided for the men's baseball team. The practice field for the women's softball team was in disrepair and was referred to by the players as "The Ghetto." In addition, Defendant ASU did not provide the budget for full time assistant coaches on a regular basis for the women's softball team, as it did for the men's baseball team, and did not provide the softball program with as much financial support. Coach Hall began to complain to Defendant ASU about the discriminatory difference in treatment for the women's programs in violation of Title IX. In addition, Coach Hall filed a Complaint with the Office of Civil Rights ("OCR") on or about March 8, 2013, charge number 04-13-2138. This OCR Complaint alleged that, on the basis of sex, the women's softball team and the coaching staff were being denied the benefits of and had been subjected to discrimination under ASU's policies and budgetary

considerations for the women's softball and the men's baseball teams. The OCR Complaint alleged specifically that female athletes who played softball at Alabama State University were suffering as a result discriminatory conduct based on sex, and that the ASU men's baseball team was treated substantially better than the women's softball team and had received preferential treatment in, at least, the areas of the provision and compensation of coaches; the provision of tutors and trainers; recruitment; housing; and publicity/marketing. The OCR Complaint was pending and investigated from March 8, 2013, to April 1, 2013. On April 1, 2013, The OCR Complaint was denied because there was an open investigation of ASU's entire athletics program and Coach Hall's claims were encompassed within that active investigation, and also because the EEOC had investigative authority over some of Coach Hall's claims.

23.   ASU discriminated against Coach Hall in pay and in other terms and conditions of her employment because of her gender (female) in violation of Title VII. Coach Hall's position as the Head Coach for ASU's women's softball team was substantially similar to that of the men's baseball Head Coach, Mervyl S. Melendez, a male, with the only major difference being the gender of the players.

24.   In the 2012 fiscal year, Coach Hall's base salary was $38,079. Coach Hall's salary had not changed since the 2007-08 school year. In the fiscal year,

7

Coach Melendez's base salary for his first year, excluding any accrued bonuses or bonus opportunities, was an estimated $125,000, without his initial signing bonus or moving expenses. There were no such bonuses or bonus opportunities associated with Coach Hall's job position as Head Softball Coach at this same time.

25.    Coach Melendez's contract provided numerous opportunities for bonuses and other financial benefits that were are not included in any way in Coach Hall's (last written) contract or otherwise in her employment terms.

26.    On or about June 11, 2011, Defendant ASU hired Jose Vazquez, male, as an assistant  men's baseball coach, into the job position of Associate Head Baseball Coach at a yearly salary of $80,000.00 Coach Vazquez did not negotiate his salary with Defendant ASU, and he was just offered the salary amount of $80,000.00, which was a substantial increase over his salary at his prior job. Coach Hall's job duties and responsibilities as a Head Coach were greater than those of Coach Vazquez.

27.    In or about June, 2011, Defendant ASU also hired Drew Clark, male, as an assistant men's baseball coach into the job position of Assistant  Baseball Coach at a yearly salary of $40,000.00 Coach Clark did not negotiate his salary with Defendant ASU, and he was just offered the salary amount of $40,000.00. Coach Hall's job duties and responsibilities as a Head Coach were greater than those of

8

Coach Vasque.

28.    In 2012, Coach Hall requested that Defendant ASU increase her salary and provide her with an adequate written employment contract. On September 13, 2012, there was a budget meeting regarding, among other things, Coach Hall's salary and written contract.  During that meeting, Defendant ASU decided not to raise Coach Hall's salary or provide her with a written contract.  On September 14, 2012, Coach Hall learned of Defendant ASU's decision to not increase her salary and to not provide her with a written contract.  Defendant ASU's decision left Coach Hall with no written contract and a salary of $38,079, compared to baseball coach Melendez, who had a twelve page written employment contract and a base salary of $125,000, which was more than three times Coach Hall's salary.  Coach Hall's salary was also less than the male assistant baseball coaches.

29.    On February 21, 2013, Coach Hall executed her EEOC Charge alleging gender discrimination and pay discrimination against Defendant ASU, which was filed on February 25, 2013.  This Charge was assigned Charge Number 420-2013-01265.

30.    On or about February 22, 2013, Coach Hall executed a one page, written notice of employment with Defendant ASU as Head Coach of the Women's Softball Team for an annual salary of $38,079.00.  In addition, this notice of employment

9

contained performance bonuses for the first time in Plaintiff's employment with Defendant.    The performance bonuses were $3,00 for winning the SWAC Championship, $5,000 for winning the National Championship, and $2,000 for exceeding team multi-year Academic Progress Rate (APR) of 950. It also provided for a car allowance of $600.00.

31.    In this February 22, 2013, written notice of employment, Coach Hall's base salary of $38,079.00, remained the same as it had been since 2007, but it was a minor improvement in that it contained performance bonuses, but those performance bonuses and the other terms of the notice of employment did not compare to Coach Melendez's contract.

32.    Defendant ASU's decisions were discriminatory based on Coach Hall's gender. Defendant ASU's decisions limited and classified Coach Hall in a way that deprives her of employment opportunities and adversely affects her status as an employee in violation of 42 U.S.C. § 2000e2(a)(2).

33.    Defendant ASU discriminated against Coach Hall because of her gender in violation of Title VII, and retaliated against her due to her complaints of gender discrimination on behalf of the Women's Softball program and her own discrimination complaints. Defendant ASU paid Coach Hall less than the similarly situated male Baseball Head Coach and it also provided her female program with

inferior financial support and facilities. Defendant ASU continued to discriminate against Coach Hall on the basis of her gender and retaliated against her by paying her at a rate of less than a third at which Defendant ASU paid to a male employee holding the comparative baseball Head Coach position. Defendant ASU also discriminated and retaliated against Coach Hall by not providing her with the information and support she needed to perform her job duties and by holding her to a higher standard of scrutiny than male coaches and other employees who had not opposed discrimination. Although it does not appear that Defendant ASU had any written job descriptions for either position of Head Softball Coach or Head Baseball Coach, both Head Coaches' job positions required substantially equal skill, effort, and responsibility, and are performed under similar working conditions.

34.     Defendant ASU still discriminated against Coach Hall when it denied her request for an adequate written contract and a salary increase. Defendant ASU continued to pay the male assistant baseball coaches more than it paid Coach Hall as a Head Coach. At the time Coach Hall executed her EEOC charge on February 21, 2012, she still had not received a raise or an adequate written contract, and she still suffered continuing violations the Lilly Ledbetter Fair Pay Act of 2009, by being paid less as a Head Coach of women's softball than the 3rd-rank Assistant Coach of men's baseball. The men's baseball Associate Coach Jose Vasquez, a male, was being paid

a salary of $80,000-still twice Coach Hall's salary, and the men's baseball Assistant Coach Drew Houston Clark, a male, was being paid a salary of $40,000.00, which was slightly higher than her salary.

35.    On or about March 4, 2014, Coach Hall was verbally informed by Interim Athletic Director Melvin Hines that Defendant ASU was immediately placing her on  paid suspension from her Coaching Job and removed from her from her Teaching Job without any written explanation for these actions, despite Defendant ASU having policies and guidelines for informing employees of allegations against them.  Coach Hall was verbally instructed that she could not return to her office, the softball complex, the locker room, or have any contact with the players or assistants while she was on suspension.  Contrary to Defendant ASU policy, Coach Hall was not provided with any written documentation or instruction regarding the suspension or the allegations against her before she had to leave the campus.  Coach Hall was removed from all contact with students as if she had committed some criminal act. Coach Hall was only informed that an investigation was going to be conducted.

36.    On or about March 7, 2014, Coach Hall was finally provided with a letter from Human Resources informing her that she was being placed on "administrative leave with pay pending the outcome of the investigation into alleged unsatisfactory conduct pertaining to student-athlete welfare effective immediately." This letter also

12

informed her that she "was not to contact any student at Alabama State University," which prevented her from teaching or attending her graduate school classes. Coach Hall was later informed that there were allegations of possible NCAA violation that were going to be investigated by ASU's outside counsel, but she was not given the allegations that were made against her.

37.    During Coach Hall's employment, male coaches and coaches who have not opposed discrimination have not been placed on suspension by Defendant ASU during investigations involving NCAA allegations. Furthermore, male coaches and coaches who have not opposed discrimination are allowed to continue teaching academic classes that are not related to their coaching duties, even if they are accused of NCAA violation. Males coaches and employees who had not opposed discrimination were not banned from ASU campus as Coach Hall was.

38.    On or about March 19, 2014, ASU's outside counsel took a sworn and recorded statement from Coach Hall by asking questions on allegations of possible NCAA violations. None of the conduct about which ASU's counsel questioned Coach Hall on during this statement would be considered major violations under NCAA policies, even if they were proven to be true, and Coach Hall provided the information to show that the allegations were not true. In fact, Coach Hall provided information to ASU's outside counsel to show that the documents being used in her

13

recorded statement were not valid or accurate documents and had false information on them.

39.     Coach Hall was placed on suspension as Head Coach, not allowed to teach her academic classes, not allowed to attend her graduate classes on campus, and not provided with proper written notification of the reasons for her suspension due to my gender, female, and in retaliation for filing her prior Charge of Discrimination and her complaint of gender discrimination with the OCR. All of this conduct was in violation of Title VII.

40.     On or about May 2, 2014, Coach Hall's employment was terminated by Defendant ASU. Coach Hall received a letter dated May 2, 2014, from Human Resources only notifying her that she was being terminated immediately. Coach Hall was not given written notification of the reasons for her termination. At the time of her termination, Coach Hall was not provided with written notification of the results of the investigation into the allegations against her or the possible NCAA violations. ASU policies and NCAA Rules require that Coach Hall be provided with written notifications of the allegations against her and for the reasons for her termination. At the time of her termination, there had been no formal finding or completion of any NCAA investigation of possible violations. At the time of her termination, male coaches also had NCAA allegations and investigations pending and they were not

terminated. Plaintiff and others in the Athletic Department were aware of the allegations of NCAA violations against the male football and baseball coaches at the time of her suspension and termination. Plaintiff was terminated due to her gender, female, and in retaliation for filing her prior Charge of Discrimination and her OCR complaints of gender discrimination. All of this conduct was in violation of Title VII.

41. On May 5, 2014, Coach Hall received another written notification from Defendant ASU that her contract as Head Softball Coach had been terminated immediately and that she would be removed from benefits effective, June 1, 2014. This letter did not provide the reasons for her termination.

42. Pursuant to ASU policy, Coach Hall hand delivered grievance letters to Human Resources and to President Gwendolyn Boyd on or about May 12, 2014, contesting her termination and requesting written notification for the reasons for her suspension and termination and further requesting the due process to which she was entitled as a long term employee of ASU. Coach Hall also protested the discrimination and retaliation against her and the difference of treatment that she received from the similarly situated male coaches in these letters.

43. On or about May 14, 2014, in-house counsel for ASU notified Coach Hall through her counsel that there would be no response from Defendant ASU to Coach Hall's May 12, 2014, letters contesting her termination. Defendant ASU failed

to follow its policies and provide due process to Coach Hall due to her gender,

female, and in retaliation for filing her

44.     Coach Hall never received any formal response from Defendant ASU to

her May 12, 2014, grievance, as outlined by ASU policy.

45.     The EEOC's investigation of Coach Hall's Charge of Discrimination

continued during the 2013-2014 school year, and was ongoing at the time of her

discriminatory and retaliatory suspension and her termination.     The OCR

investigation was also being conducted during 2013.

46.     On or about August 7, 2014, Coach Hall filed her Amended Charge of

Discrimination with the EEOC against Defendant ASU.  This Charge was assigned

Charge number 420-2014-02694.     Coach Hall alleged that she was being

discriminated against being retaliated against by ASU for filing her first Charge of

Discrimination and protesting discrimination by being denied a pay increase, being

suspended, and being terminated.

47.     On or about November 30, 2015, the EEOC issued a Letter of

Determination finding that ASU had discriminated against Coach Hall in pay.

48.     Throughout her employment, Coach Hall was discriminated against and

treated differently in the terms and conditions of her employment because of her

gender, female, and in retaliation for protesting gender discrimination in violation of

16

Title VII, for filing her prior Charge of Discrimination, and for filing her OCR complaints of gender discrimination.

49. In their actions toward Plaintiff as described above, Defendant ASU acted willfully, intentionally and with callous and reckless indifference to Plaintiff's federally protected rights under Title VII.

50. As a result of Defendant's denial of the pay increases and contracts, suspension, misapplication of policies, termination, and other acts against Plaintiff in retaliation for her exercise of her rights to complain about discrimination, and due to her gender, Plaintiff has suffered loss of income, loss of job benefits, severe humiliation, mental distress and emotional suffering.

## COUNT ONE

## TITLE VII

51. Plaintiff realleges and incorporates by reference paragraphs 1 - 50 above as though recopied and restated herein in full.

52. As set out in detail above, Defendant intentionally and maliciously discriminated against Plaintiff on the basis of gender in violation of Title VII by paying her less than similarly situated male employees, by denying her contracts with the same terms and benefits as male employees, by providing her sport with less financial support than the male employees, by suspending her from her coaching and

teaching duties, by terminating her employment, by failing to follow university policies regarding the terms and conditions of her employment, and by subjecting her to stricter scrutiny than similarly situated employee not in the protected class. Defendant ASU intentionally violated Plaintiff's rights pursuant to Title VII.

53.     All acts of discrimination were done wilfully and with malicious and reckless disregard for the rights of Plaintiff.

54.     In taking the above-described actions, Defendant ASU intentionally discriminated against Plaintiff on the basis of her gender in violation of Title VII. The actions of Defendant were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

55.     As a proximate consequence of Defendant's actions and the violation of Title VII, as set out in detail above, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

56.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's conduct as set forth herein unless enjoined by this Court.

57.     Plaintiff has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory damages is her only means of securing adequate relief.

18

58.     As set out in detail above, the Defendant knew, or should have known, of the gender discrimination and condoned, ratified and otherwise allowed the discriminatory behavior to continue.

59.     Plaintiff suffered damages as a proximate result of these violations, which were caused by Defendant's policy or custom to allow and condone racial and sexual discrimination in deliberate indifference to rights of Plaintiff.

60.     Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claims:

A.      Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant on February 25, 2013, and her Amended Charge of Discrimination on August 7, 2014, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.      On or about April 22, 2016, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff the Notice of Right to Sue on EEOC Charge Number 420-2014-02694. Plaintiff received said this Notice on May 2, 2016.

C.      On or about July 12, 2016, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff the Notice of Right to Sue on EEOC Charge Number 420-2013-01265. Plaintiff received said this Notice on July 18, 2016.

D.     This complaint has been filed within 90 days of Plaintiff's receipt of the notifications of Right to Sue letters on her EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

61.    Defendant's conduct violates Title VII.

## COUNT TWO

## TITLE VII - RETALIATION

62.    Plaintiff realleges and incorporates by reference paragraphs 1 - 61 above as though recopied and restated herein in full.

63.    As set out in detail above, Plaintiff has been intentionally discriminated against and retaliated against in violation of Title VII by Defendant ASU for protesting gender discrimination.

64.    In taking the above-described actions, Defendant ASU intentionally discriminated against and retaliated against Plaintiff for protesting against gender discrimination.  Employees who have not opposed discrimination have not been treated in a similar manner as Plaintiff.  The actions of Defendant ASU were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

65.    Plaintiff complained about the retaliatory actions and Defendant failed to take corrective actions to prevent the retaliation.  Defendant ASU's actions were in violation of Title VII.

66.   As a proximate consequence of Defendant ASU's actions and the violation of Title VII, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

67.   The retaliation against Plaintiff was ongoing and of a continuous nature.

68.   Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claims:

A.   Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant on February 25, 2013, and her Amended Charge of Discrimination on August 7, 2014, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.   On or about April 22, 2016, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff the Notice of Right to Sue on EEOC Charge Number 420-2014-02694. Plaintiff received said this Notice on May 2, 2016.

C.   On or about July 12, 2016, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff the Notice of Right to Sue on EEOC Charge Number 420-2013-01265. Plaintiff received said this Notice on July 18, 2016.

D.   This complaint has been filed within 90 days of Plaintiff's receipt of the notifications of Right to Sue letters on her EEOC Charges from the U.S. Department

21

of Justice, Civil Rights Division.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A.   Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto;

B.   Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

C.   Grant Plaintiff reinstatement to her position from which she was retaliatory and discriminatorily terminated;

D.   Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, a pay raise with backpay in the amount she would have earned but for the unlawful and discriminatory practices of Defendant, and reinstatement to the job positions from which she discriminatorily terminated, or in the alternative, frontpay;

E.   Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

F.   Award Plaintiff her costs and expenses, including an award of reasonable attorney's fees; and,

G.     Award such other relief as may be appropriate.


**<u>JURY DEMAND</u>**

**PLAINTIFF HEREBY DEMANDS TRIAL BY A STRUCK JURY.**


Respectfully submitted this the 19th day of July, 2016.


Respectfully submitted,

Candis A. McGowan

Candis A. McGowan
(ASB-9358-036C)
Lacey K. Danley
(ASB-2975-X54S)

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS, FISHER, GOLDFARB
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
cmcgowan@wigginschilds.com
ldanley@wigginschilds.com

23

Sabrina L. Comer
(ASB-4347-R75S)

COMER ELDER LAW, LLC
325 North Hull Street
Montgomery, AL 36104
(334) 265-7133 – Phone
sabrina@comerelderlaw.com

Counsel for the Plaintiff

Service on Defendant via certified mail:

Alabama State University
P.O. Box 271
915 S. Jackson Street
Montgomery, Alabama  36101 (36104)