IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TELMA O. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-cv-593-JTA |
| | ) | |
| ALABAMA STATE UNIVERSITY, | ) | (WO) |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Reconsider filed by Defendant Alabama State University ("ASU") (Doc. No. 128), Plaintiff Telma Hall's Response in Opposition (Doc. No. 129) and ASU's Reply thereto (Doc. No. 130). ASU asserts this court erred in denying its motion for summary judgment on Hall's gender discrimination claim under Title VII of the Civil Rights Act, as amended (42 U.S.C. § 2000e, *et seq.*).

Upon consideration of the arguments of the parties and the applicable law, the Court finds that the motion is due to be DENIED.

**I.  FACTUAL BACKGROUND**[1] **AND PROCEDURAL HISTORY**

Hall's Complaint against ASU alleged multiple grounds of gender discrimination and retaliation in violation of Title VII. (*See* Doc. No. 1.) ASU's motion for summary judgment (Doc. No. 20) was successful as to all but one of Hall's claims – that she was

---

[1] Unless otherwise noted, the facts relevant to this Court's ruling are taken from the Memorandum Opinion and Order, issued on January 8, 2019. (*See* Doc. No. 59.)

subjected to gender discrimination when ASU suspended her "from coaching and teaching duties" based upon alleged misconduct in her role as its head softball coach. (*See* Doc. No. 1 at ¶ 52.)

Hall was employed as ASU's head softball coach from October 2005 through May 2014. As head coach, Hall was responsible for recruiting, budgeting, and reporting National Collegiate Athletic Association ("NCAA") violations. Beginning in the summer of 2013, she also worked as an adjunct professor. During her employment at ASU, Hall attended graduate school and completed a graduate program at ASU.

Gwendolyn Boyd began her tenure as President of ASU in February 2014. Melvin Hines began serving as ASU's Interim Athletic Director in September 2012 and was named Athletic Director at some point during Boyd's presidency.[2]

On March 2 and 3, 2014, Boyd received two emails from parents of softball players. The emails complained that Hall "did not provide sufficient food to the athletes during team travel, that athletes were left on a bus, and that practice hours prevented students from eating in the cafeteria." On March 4, 2014, Hall was placed on administrative leave with pay as well as banned from campus and having any student contact, thus preventing her from serving as an adjunct professor or participating in the graduate-level classes in which she was enrolled. Hines recommended to Boyd, through John Knight, ASU's Executive Vice President/Chief Operating Officer, that Hall be suspended. (Doc. No. 26-5 at 65:254.)

---

[2] Hines stated that he reported to Executive Vice President John Knight while serving as Interim Athletic Director and began reporting to Boyd when he was named Athletic Director. (Doc. No. 26-5 at 11:39; 12:40-42.)

2

This recommendation was reached after consultation with Boyd, ASU's General Counsel Kenneth Thomas, and human resources personnel. (Doc. No. 26-5 at 66:256-57.) On April 28, 2014, Hines and Knight recommended to Boyd that Hall be terminated from her employment. Boyd approved the recommendation on April 30, 2014. (Doc. No. 20-9 at 2.) ASU issued a notice of termination on May 2, 2014. (Doc. No. 20-9 at 4.) On October 21, 2016, the NCAA issued a Public Infractions Decision announcing an agreement between enforcement staff, ASU and Hall that the softball program had exceeded practice time limits established by the NCAA.

The key question for purposes of the pending motion is whether ASU baseball coach Mervyl Melendez qualifies as a comparator in Hall's gender discrimination claim. Melendez was employed as the head baseball coach in 2012 when the parent of a baseball player complained that Melendez required student-athletes to use performance-enhancing drugs and discriminated against non-Hispanic members of the baseball team. Melendez was not suspended during the investigation into the allegations. Dr. William Harris was President of ASU when the allegations arose and the investigation was not concluded until 2015, while Boyd was President of ASU.

In February 2015, during Boyd's tenure, ASU submitted a supplemental report to the NCAA regarding Melendez. Boyd was asked during her deposition

> Q: Hypothetically, if a baseball player's father complained that the coaches were asking the students to take performance-enhancing drugs, or steroids, or anything such as that, would that be immediately (sic) enough to suspend the coaches pending an investigation?
>
> A: Pending an investigation, absolutely, because that's an NCAA violation.

> Q: And do you know whether any such complaint like that was received by ASU against –
>
> A: Not to me.

(Doc. No. 20-8 at 120-21.)

At the summary judgment stage ASU asserted that, under Eleventh Circuit case law, Melendez was not an appropriate comparator to Hall because Harris was president/decisionmaker at the commencement of the Melendez investigation and Boyd was in that role when the allegations against Hall were made. (Doc. No. 59 at 15.) The Court acknowledged that "comparators accused of a violation of a rule must be nearly identical," but found Boyd's deposition testimony to be pivotal because she stated that the hypothetical baseball coach "should have been suspended as Hall was." (*Id*. at 16.) The Court concluded that Hall "established a *prima facie* case of disparate treatment in suspension based on Melendez as a comparator." (*Id*.) The motion for summary judgment was therefore denied as to this claim.

On July 6, 2020, ASU filed a Motion for Leave to File a Motion to Reconsider the Court's January 8, 2019 Memorandum Opinion and Order (Doc. No. 114), which argued that the Court erred in finding that Melendez was a comparator and that Hall met the *prima facie* elements of a gender discrimination claim. The Court granted that motion. (Doc. No. 127.) Thereafter ASU filed its motion to reconsider which is ripe for review.

## II. APPLICABLE LAW

"The only grounds for granting a [motion to reconsider] are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir.

2007) (citation omitted).  The Eleventh Circuit has also noted that "many cases recognize that a change in controlling law is one of the core reasons for filing and granting a motion for reconsideration."  *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151-52 (11th Cir. 2011) (listing cases).  "A motion for reconsideration cannot be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  *Davis v. Daniels*, 655 F. App'x 755, 757 (11th Cir. 2016).  *See American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to allow movant "two bites at the apple").

### III.   DISCUSSION

ASU challenges the Court's prior ruling that Hall established a *prima facie* case that would allow her to present her gender discrimination claim for disparate treatment in suspension to a jury.  ASU raises two grounds for this Court to reconsider its earlier finding that Melendez is an appropriate comparator for purposes of a *prima facie* case.[3]  ASU argues that (1) Melendez and Hall had different supervisors; and (2) Boyd was unaware of Melendez's alleged infraction at the time of Hall's suspension.

Because ASU did not frame its arguments according to the grounds for reconsideration recognized by the Eleventh Circuit, the Court will treat the motion as an

---

[3] While ASU's motion to reconsider presents two grounds for this Court to consider, its Notice of Filing asserts a third ground for finding that Hall has not established a *prima facie* case.  (*See* Doc. No. 136.)

attempt to correct an error of law.[4]  *Arthur,* 500 F.3d at 1343.  The Court addresses the arguments raised by ASU below.

    A.  Different Supervisors

In arguing that the summary judgment ruling was erroneous, ASU cites *Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019) (en banc) to show that Melendez cannot serve as a comparator to Hall.  *Lewis* clarified the standard for how courts in this Circuit should assess comparators, holding that "a plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are 'similarly situated in all material respects.' "  *Lewis*, 918 F.3d 1226.  After emphasizing that evaluation of the "all material respects" standard "will have to be worked out on a case-by-case basis," the Circuit provided examples of "the sorts of similarities that will, *in the main*, underlie a valid comparison."  *Id*. at 1227 (emphasis added).  The *Lewis* factor argued by ASU is that "a similarly situated comparator will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff."  *Id*. (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (observing that "disciplinary measure undertaken by different supervisors may not be comparable for purposes of Title VII analysis")).  ASU also directs the Court to *Hester v. Univ. of Ala. Birmingham Hosp*., 798 F. App'x 453 (11th Cir. 2020), for its "same supervisor" argument, reasoning that the succession of ASU presidents precludes comparison between Hall and Melendez because "[a]t the time of the complaint against Melendez in 2012, Dr. William Harris was ASU's Interim President" and Boyd

---

[4] ASU has not presented any new evidence which was not available at the time of the Court's decision or argued any manifest errors of fact.

"was not involved in determining what, if any actions, to be taken against Melendez in 2012." (Doc. No. 128 at 5.)

Hall argues that regardless of which ASU president presided over the investigations, the same ASU officials were responsible for the recommendations to suspend Hall and not suspend Melendez. (Doc. No. 129 at 9-10.)

The Court rejects ASU's argument that *Lewis* and *Hester* stand for the proposition that as a matter of law comparators must be supervised by the same individual or the same decision maker must administer the disciplinary action in order to establish disparate treatment under Title VII. ASU overlooks the qualifiers used by the Eleventh Circuit in *Lewis* and *Hester*. In *Lewis*, the Circuit cautioned that the factors to be compared would indicate valid comparators "in the main" and that potential comparators would "not invariably" have the same supervisor. *Lewis*, 918 F.3d at 1227. In *Hester*, the Circuit noted that its comparator criteria are applied "generally." *Hester*, 798 F. App'x at 457. Hence, the qualifying language employed by the Eleventh Circuit and directions that comparators be evaluated on a case-by-case basis contradict ASU's argument.

Further, the Court directly addressed the "same supervisor" issue in its summary judgment ruling and found that because Boyd's presidency straddled the Melendez and Hall investigations, the different treatment of the two under the same employment policy supports the determination that Melendez is a proper comparator. (Doc. No. 59 at 16.) Because the record shows that the Court fully considered ASU's "different supervisor" argument and ASU has not shown any manifest error in law or change in controlling law on this issue, the Court finds no error. *See Hughes v. Stryker Sales Corp.*, Civil Action No.

7

08-0655-WS-N, 2010 WL 2608957, at *3 (S.D. Ala. June 28, 2010) (a motion to reconsider is not a "vehicle for rehashing arguments considered and rejected") (citing *Gipson v. Mattox*, 511 F. Supp. 1182, 1185 (S.D. Ala. 2007)).

B.  Boyd's Knowledge

ASU next argues that Boyd did not have knowledge of Melendez's alleged infraction when Hall was suspended.  (Doc. No. 128 at 8.)  ASU asserts that under *Jones v. Gerwens* and a recent decision from this district, *Rousseau v. Ala. Cmty. Coll. Sys.*, No. 2:20-cv-391-RAH-SMD, 2021 WL 3476605 (M.D. Ala. Aug. 6, 2021), a plaintiff fails to establish a *prima facie* case if she cannot show that her employer was aware of the comparator employee's misconduct.  (Doc. No. 128 at 7 (citing *Rousseau*, 2021 WL 3476605 at *5).)  In making this argument, ASU presents the same testimony cited in the Court's decision that a jury should consider whether ASU improperly suspended a female coach for possibly mistreating student athletes when it took no action against a male coach facing similar complaints.  (Doc. No. 128 at 9.)

Hall responds that even after Boyd learned of the Melendez complaint, ASU took no action against him.  (Doc. No. 129 at 8, 11.)  Further, she asks the Court to recognize that because the same ASU officials determined the response to both complaints and recommended that Boyd suspend Hall, it is appropriate to find comparator status.  (*Id.* at 9-10.)

"By its very nature . . . discrimination is a comparative concept – it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.' " *Barber v. Cellco P'ship*, 808 F. App'x 929, 936 (11th Cir. 2020) (quoting

8

*Lewis*, 918 F.3d at 1223). The record before the Court establishes that, albeit the identity of the person who fulfilled the role of ASU president and was the ultimate decision maker as to the discipline imposed changed during the relevant period, the ASU officials who made the recommendation for the discipline remained the same. (Doc. No. 26-5 at 65:254; 66:256-57; 84:331.) Accordingly, Hall has raised an inference that she and Melendez were subjected to different treatment under the same employment policy by the same group of officials, therefore the summary judgment ruling in this case will stand. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (stating that the relevant inquiry for discriminatory intent is whether comparators were "subjected to different employment policies" by their employer). ASU has not shown any manifest error in law.

    C.  Adverse Employment Action

On April 25, 2022, ASU entered a Notice of Filing (Doc. No. 136) which apprised the Court of a recent Eleventh Circuit decision addressing "[w]hether suspension with pay can rise to the level of an adverse employment action in discrimination cases," an issue of first impression in this Circuit. *Davis v. Legal Svcs. Ala., Inc.*, 19 F.4th 1261, 1266 (2021). ASU reminds the Court that it argued in its Brief in Support of Summary Judgment that Hall's suspension was not an adverse employment action. (Doc. No. 136 at ¶ 2; Doc. No 20 at 65.) Although ASU did not move to amend its motion to reconsider, it now urges the Court to find that Hall's paid suspension was not an adverse employment action, that she has not made a *prima facie* case, and summary judgment should be entered in its favor. (Doc. No 136 at ¶ 3.)

In *Davis*, the Eleventh Circuit noted that no Circuit has held that "a simple paid suspension, in and of itself, constitutes an adverse employment action." *Davis*, 19 F.4th at 1266. The Circuit then stated, "[w]e agree with our sister Circuits that a simple paid suspension is not an adverse employment action." *Id*. at 1267. "A paid suspension can be a useful tool for an employer to hit 'pause' and investigate when an employer has been accused of wrongdoing. . . . Employers should be able to utilize the paid-suspension tool in good faith, when necessary, without fear of Title VII liability." *Id*. However, the Circuit's analysis did not end there. The Circuit proceeded to consider the factual circumstances surrounding Davis's paid suspension and concluded that the circumstances did not rise to the level of an adverse employment action. *Id*.

This Court's ruling is not in conflict with *Davis*. After surveying the range of decisions within this Circuit, the Court looked at "all of the actions ASU took in suspending Hall – including suspending her from coaching for over a month; barring her from contact with all students . . . prevent[ing] her from teaching classes and stopp[ing] her from taking her own classes; and preventing her from having access to her files" and concluded that "this is not a case, like those in other circuits, in which there was a suspension with pay 'without more.' " (Doc. No. 59 at 11-12 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)).[5] ASU does not address these "without more" circumstances. (*See* Docs. No. 134, 136.) Because the Court fully discussed how Hall's suspension was not a simple paid

---

[5] This Court's ruling is not inconsistent with *Davis* but was actually prescient on the approach later taken by the Eleventh Circuit. *Joseph v. Leavitt* was the lead case cited in *Davis* to distinguish those cases and circumstances where a paid suspension may constitute an adverse employment action. *See Davis*, 19 F.4th at 1266.

suspension in its summary judgment ruling and ASU does not challenge the Court's "without more" analysis, the Court finds no manifest error in law.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motion to Reconsider (Doc. No. 128) filed by Defendant Alabama State University is DENIED.

DONE this 17th day of June, 2022.

*Jerusha J. Adams*
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE